UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GEORGE BALLATO, | Civil No. 09-2236 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| COMCAST CORP., | |
| Defendant. | |

Mark A. Greenman, **LAW OFFICE OF MARK A. GREENMAN**, 10 South 5th Street, Suite 700, Minneapolis, MN 55402, for plaintiff.

Peter J. Gillespie and Craig R. Annunziata, **FISHER & PHILLIPS LLP**, 140 South Dearborn Street, Suite 1000, Chicago, IL 60603; and Jon W. Morphew, **SCHNITKER & ASSOCIATES, PA**, 1330 81st Avenue N.E, Spring Lake Park, MN 55432, for defendant.

Plaintiff George Ballato brought this action for interference with his rights under the Family and Medical Leave Act ("FMLA"), and for retaliation, after he was terminated from Comcast Corporation ("Comcast") in June 2009. Because the Court finds no evidence of interference with protected rights under the FMLA, and no evidence of retaliation, the Court grants Comcast's motion for summary judgment.

## BACKGROUND

**I.    BALLATO'S HIRING AT COMCAST AND APPROVAL OF FMLA LEAVE**

Comcast hired Ballato in September 2007 as a customer account executive. (Dep. of George Ballato, 7:15-17, Mar. 23, 2003, Decl. of Peter J. Gillespie Ex. X, Docket

No. 14.) In the final months of his employment at Comcast, Ballato's work involved handling calls from Spanish-speaking customers. Ballato's annual review, conducted in February 2009, indicated that his scores on Comcast's performance metrics were too low. Ballato believed his work was being unfairly evaluated by Maria Velasquez who had been assigned to monitor his performance on the telephone. Ballato believed that Velasquez was scoring his calls unfairly and was "stressed out" that the poor scores would lead to his termination. (Ballato Dep. 25:25-26:2.)

Ballato applied for FMLA leave in April 2009. (*Id.* 14:16-18.) Liberty Mutual, which handles Comcast's leave programs, provisionally approved Ballato's request on May 4, 2009. (Gillespie Decl. Ex. A.) On May 14, 2009, Dr. Derrick Williams completed Ballato's required FMLA Certification of Health Care Provider, noting that Ballato suffered from chronic fatigue, depression, and weakness, and certifying Ballato's condition as "chronic" and requiring "periodic treatments." (*Id.* Ex B.) The Certification stated that Ballato required intermittent absences of five days per month. Liberty Mutual approved Ballato's request for intermittent leave on May 18, 2009, granting intermittent leave between March 1, 2009 and February 2010. (*Id.* Ex. C.)

Comcast's personnel policy requires that employees on intermittent FMLA leave contact Comcast's Resource Management Center ("RMC") when the employee needs to use the leave. Ballato took his first day of approved FMLA leave on May 8, 2009, and subsequently took twelve days off as FMLA leave. Ballato also received paid bereavement leave from May 20-27, 2009, when his mother passed away. The last shift Ballato worked at Comcast was on May 19, 2009.

**II. TERMINATION FROM COMCAST**

On June 1, 2009, Ballato called RMC to use his FMLA leave. He also sent an email to Human Resource Generalist Totrinh Phan stating that a hypothetical person was growing increasingly miserable at Comcast, and wanted to quit but could not because if he or she did, he or she would not be eligible for unemployment benefits. (Gillespie Decl. Ex. D.) Though Ballato would not admit he was the hypothetical person, he responded to a question about the hypothetical person by stating, "I was growing increasingly miserable, but I couldn't quit . . . ." (Ballato Dep. 32:18-23.) Later that day, Ballato forwarded the email to several people, including his supervisor Andrew Piontek. Piontek responded that day and suggested that Ballato could become a "specialist," and move to another department where he may be happier. Ballato sent another email to Piontek later that night saying, "The level of pressure has exceeded far beyond the 3 months . . . I'm most concerned about my sanity . . . ." (Gillespie Decl. Ex. F.)

On June 2, in response to Ballato's email from the previous evening, Piontek wrote that Ballato "can do it if [he puts] his mind to it and trie[s] to have fun at it along the way." (*Id.* Ex. G.) Piontek also wrote, "If you don't enjoy your work or feel you can succeed in it maybe there should be soul searching in what you really enjoy. I want to see you happy and succeed in whatever you do but only you know what is in your heart." (*Id.*) Ballato testified that he felt betrayed by Piontek's email, and forwarded it to Phan, commenting, "I don't even want to look at Piontek right now." (*Id.*; Ballato Dep. 35:17-18.) Upon Phan's suggestion, Ballato agreed to meet and they discussed whether Ballato

would be able to collect unemployment benefits if he quit his job. Phan explained Ballato may not be able to receive unemployment benefits if he quit. (Ballato Dep. 33:5-20.)

On June 3, Ballato sent an email to Comcast Vice President Bill Wright stating: "Please stop sending me Comcast propaganda . . . We are not one big happy family." (Gillespie Decl. Ex. H.) Ballato forwarded Piontek a copy of the email addressed to Wright. Comcast's HR records indicate that Ballato failed to call in or use FMLA leave on June 3.

On June 4, Ballato attempted to send a mass email to all Call Center employees at Comcast urging them to "talk to union representatives and organize." (Ballato Dep. 45:11-46:6.) Comcast's email system does not allow employees to send out mass emails in that manner, and the message was returned as "undeliverable." (*Id.* 45:5-9.) Ballato forwarded the message to Piontek, asking him to help circulate the message. (*Id.* 46:19-22.) Piontek told Ballato that he was unable to open the forwarded message and could not send it. (Gillespie Decl. Ex. L.)

Ballato then sent an email to Maria Velasquez with the subject line "YOU WIN." Ballato wrote:

> Does destroying people's careers and reputations give you a sense of power? . . . We have come to the conclusion that you are a Latina that makes herself feel superior by making the rest of us look like incompetent fools. Long after I am gone, you will continue to dismantle thge [sic] Spanish qeue [sic] . . . You will chase away good reps. Doing so will not magically turn you caucasian. You are Latina, be proud of that and help your fellow Spanish speakers. But nothing will change. You even stated in our meetings that you are "above the law" . . . I will pray for you. May God soften your heart. Let's see what happens to me.

(Gillespie Decl. Ex. K.)  Later that day, Ballato responded to Piontek's email about being unable to see the forwarded message, and asked about his status as a Comcast employee. (*Id.* Ex. L.)  That evening, Piontek responded, "You are still employed by Comcast and we look forward to your return."  Ballato replied, "That's great!  I can't wait to get back on the phones to truly educate our customers!"  (*Id.*)  Piontek forwarded Ballato's undeliverable message to Phan that night.

At 8:41 AM on June 5, Phan forwarded Ballato's undeliverable email to HR Manager James Randle, with a note stating:

> James – looks like George is trying to send something out to all employees in the call centers. I will arrange of [sic] his system and access to be deactivated[.] I suggest we contact him before his shift started to put him out on admin pay.  Thoughts?

(Gillespie Decl. Ex. M.)  Phan testified that the emails Ballato unsuccessfully tried to send were disturbing and concerning.  (Dep. of Totrinh Phan, 24:11-16, June 24, 2010, Gillespie Decl. Ex. Y.)  Deactivating Ballato's system and access meant he would not have remote access to the computer system, and would not have access to Comcast's doors.  (*Id.* 23:13-23.)  Phan testified that Ballato was on "deactivated status," meaning he was still an active employee and was able to be scheduled for work with the scheduling department.  (*Id*. 23:24-24:6.)  Other Comcast employees had been put on administrative pay when an investigation about their conduct occurred, though Phan testified that no investigation occurred regarding Ballato.  Instead, she said that an investigation and deactivation were simply her suggestions.  (*Id.* 25:21-26:7.)

At 9:00 AM on the same day, Ballato sent another email to Piontek titled "ok you guys win[.]" (Gillespie Decl. Ex. N.)  In that message, Ballato stated:

> This comes from the George you grew to know and love.  You don't need to respond as you've probably been coached on prudence in your writings.  But please read it as it may help the next CAE and may help you as a supervisor.  If I'm **willing to leave a decent job without a back up plan, there must be good reason** . . .
>
> I did notice you were much quicker to defend Maria . . . **Watch what happens aft[]er I'm gone** . . .
>
> **I'll miss ya, Andrew**.  Jean & Totrinh and James, Jose, Diego, Terry, Zina – I feel like crying like a little b*&%h – like I've lost another family member . . . **Maybe once I'm gone, things there can start to change. PEACE.**

(*Id.* (emphasis added).)  Ballato forwarded the email to Phan at 9:30 AM, who forwarded it to Randle.  (*Id.*)  Randle expressed concern for the health and safety of Ballato and other employees, so he forwarded the email to Director of Human Resources Caroline Aspenson, and Vice-President of Human Resources Julie Harrison.  (*Id.* Ex. O) ("I am worried about the health and safety of this employee . . . and others . . . .").

At 9:05 AM, Ballato forwarded the message to Comcast Manager Bethany Rector.  He also wrote her a message stating:

> You've probably heard, I've kinda [lost] it, in the sense that I'm about ready to quit.  Unemployment would have been nice, but they won't do it AND I won't last another 60 days as thing stand now . . . By the way, I really appreciate you.  You've been great.  You are also gorgeous (I can say that now lol)

(*Id.* Ex. P.)  Rector forwarded the email to Randle.  At 9:29 AM, Randle emailed Aspenson suggesting that they notify security about the situation with Ballato, and

- 6 -

opining that he did not seem stable.  (*Id.* Ex. Q.)  Subsequently, Comcast deactivated Ballato's access to the workplace.

Ballato testified that he called RMC between 3:00 PM and 3:30 PM on June 5 to take leave for that day.  (Ballato Dep. 55:9-12.)  Ballato stated that he spoke to someone who said that he or she could not find him in the system.  (*Id.* 55:19-23.)  The person Ballato spoke with asked if he was still with the company, to which Ballato replied, "I hope I'm still with the company."  (Ballato Dep. at 55:20-21.)  Ballato testified that the person he spoke with advised him to call his supervisor.  Comcast alleges it has no record of Ballato's June 5 call.  Ballato's counsel offered as evidence a cell phone bill allegedly showing a call to the RMC's phone number at 3:17 PM, though no call at that time appears on the proffered exhibit.  (*See* Decl. of Mark A. Greenman Ex. 5, Docket No. 20.)[1]  Ballato did not email Piontek or anyone else in Comcast's HR department following his alleged phone call.

---

[1] Mark A. Greenman, Ballato's counsel, submitted a declaration stating:

> 2.    Attached hereto as Exhibits 1 through 13 are true and correct copies of what they purport to be.  With respect to Exhibit 5, these are cell phone records I received from Mr. Ballato after I requested that he obtain duplicate statements

(Docket No. 20.)  "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)." *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) (quotation marks omitted).  The exhibits accompanying the declaration appear to be correspondence between Ballato and various coworkers, correspondence between Ballato and Comcast, Ballato's cell phone records, and Ballato's handwritten complaint to the Minnesota Department of Employment and Economic Development.  Documents attached to Greenman's declaration do not appear to be admissible as the declaration contains no evidence that Greenman has personal knowledge of the documents or that they were properly authenticated per Rule 56(e). The Court cites Greenman's declaration

(Footnote continued on next page.)

Comcast's HR Department records are maintained separately from Comcast's RMC records, and the HR records indicate that Ballato failed to call in on June 5 or report his absence. (Gillespie Decl. Ex. I.) The RMC has no ability to hire or fire an employee, and Comcast's HR Department's records did not reflect that Ballato's employment had been terminated as of June 5, 2009. (Phan Dep. 27:2-29-21.)

Randle stated he called Ballato twice on June 5. Randle first called Ballato while Ballato was at home, and when he did not answer, Randle left him a voicemail asking that Ballato call him. Ballato did not return the call, because he believed Randle was calling to terminate him. (Ballato Dep. 58:15-19.) Ballato said that at least one of the calls occurred after the conversation with the RMC. (*Id.* 57:4.) After the phone calls from Randle, Ballato testified that he went to the Comcast facility where he worked, but his badge did not work, so he went home. (*Id.* 62:12-24.) He did not call anyone or ask to be allowed to enter. On Sunday, June 6, 2009, Ballato called Randle's office line and left him a message stating that he spoke with an attorney, and that his attorney instructed him not to have contact with anyone from Comcast. (Gillespie Decl. Ex. R ("I just politely like to request just for the time being that you cease and desist all communication with me. Okay?").)

Ballato was scheduled to work the 4:30 PM to 1:00 AM shifts on June 8 and 9, but he did not appear for either shift. Ballato sent a letter to Phan asking the reason for his

---

(Footnote continued.)

only to highlight that even if admissible, the exhibit does not support the claim that a phone call occurred at the time alleged.

termination, which Phan received on June 9.  (Phan Dep. 15:25-16:10.)  According to Phan, she did not respond to Ballato because she was aware he had instructed Comcast not to contact him.  (Phan Dep. 16:16-22.)  Comcast's Attendance Policy requires employees to call the RMC to report absences, a requirement Ballato was familiar with.  (Ballato Dep. 10:25-11:25.)  Comcast considers three consecutive unexcused absences to be a voluntary resignation.  (Gillespie Decl. Ex. T ("Failure to notify the company about an absence on three consecutive workdays is considered to be job abandonment and you will be considered to have voluntarily resigned.").)

On June 11, Comcast notified Ballato by letter that he had failed to call or show for his scheduled shifts on Friday, June 5, and Monday and Tuesday June 8-9, thus he was considered to have voluntarily resigned.  (*Id.* Ex. U.)  The letter concluded, "Please feel free to contact me [Phan] . . . should you have questions."  (*Id.*)  Ballato never contacted Comcast in relation to the letter, and Comcast officially terminated his employment on June 24, 2009.  (Phan Dep. 35:10-13.)  Ballato was issued pay statements from Comcast on June 19, and July 2, 17, and 31.  Ballato brought this case against Comcast on August 26, 2009, for interference and retaliation in violation of the FMLA.  (Am. Compl. ¶¶ 9-12, Docket No. 1.)  This matter is now before the Court on Comcast's motion for summary judgment.  (Docket No. 11.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"To survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (internal quotation marks removed). A district court "is not required to 'accept unreasonable inferences or sheer speculation as fact.'" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (quoting *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004)); *see also Jones v. Wal-Mart Stores Inc.*, 306 Fed. Appx. 81, 83 (5th Cir. 2009) ("Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the [plaintiff's] burden." (internal quotation marks omitted)). When a plaintiff's evidence amounts only to allegations, unsupported by specific facts or evidence beyond

plaintiff's own conclusions he cannot withstand a motion for summary judgment. *Reed*, 561 F.3d at 791.

## II. FMLA

Ballato initially brought claims under the Family and Medical Leave Act for interference with his exercise of protected rights, and for retaliation. (Am. Compl. ¶¶ 9-12); *see* 29 U.S.C. § 2615(a)(1)-(2). Plaintiffs seeking to assert claims under § 2615(a) are considered to be asserting one of two types of claims: (1) a claim for interference with the exercise or attempt to exercise FMLA rights; or (2) a claim for retaliation which requires an employee to show that the employer discriminated against him for exercising his FMLA rights. *Wisbey v. City of Lincoln, Neb.*, 612 F.3d 667, 675 (8th Cir. 2010); *Seegert v. Monson Trucking, Inc.*, Civ. No. 09-699, 2010 WL 2132883, at *6 (D. Minn. May 27, 2010) (citing *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006)). Because no evidence suggests that Ballato was terminated for any reason other than his behavior and absences, and because Ballato cannot make out a prima facie case of retaliation, the Court grants Comcast's motion for summary judgment.

### A. Interference

To succeed on a claim for interference, Ballato must establish that he was entitled to a benefit that was denied. *See Wisbey*, 612 F.3d at 675. To establish that a benefit was denied, an employee must prove, among other elements, that a similarly situated person would not have been terminated. *See Wisbey*, 612 F.3d at 675 (internal quotation marks omitted); *Throneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 976-77 (8th Cir.

2005). Comcast argues that its reason for terminating its employment relationship with Ballato was not related to the FMLA leave he had been taking, but was instead based on his disturbing behavior and unexcused absences, and that any similarly situated employee would also have been terminated.

Comcast asserts that Ballato was **not** terminated from Comcast on June 5, thus there is no connection between his approved use of FMLA leave and his termination. As support, Comcast points to four facts:

1) Comcast did not terminate his employment until June 24, 2009, and maintained Ballato on the payroll until that date. (Phan Dep. 35:10-12 ("[W]e did not initiate the termination in the HR system until June 24th . . . .").)

2) Ballato acknowledged that when he called the Resource Management Center whomever he spoke to did not indicate he had been fired, and suggested that he call his supervisor. (Ballato Dep. 55:19-23.)

3) Ballato was denied access to Comcast's facilities due to "the series of disturbing emails," which raised safety concerns, not because he was terminated. (Phan Dep. 24:11-18.)

4) Ballato was kept on the payroll and received checks after June 5, 2009. (Gillespie Decl. Ex. V.)

Ballato could have called Phan, Randle, or anyone else at Comcast to clear up any confusion as to his employment or termination, but apparently never did so.

The Eighth Circuit has rejected strict applications of liability under the FMLA, thus Comcast cannot be said to have interfered with Ballato's rights simply by terminating him during a period in which he was eligible to use FMLA leave. In *Throneberry*, the Eighth Circuit said "the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable . . . . If an employee on FMLA

leave harasses a supervisor or a co-worker, [plaintiff] would contend the employer must retain that harassing employee . . . .  That would be a senseless proposition." 403 F.3d at 980.  An employer is not liable under the FMLA for interference when "the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights."  *Id.* at 977.

No evidence suggests that Comcast would have refrained from terminating Ballato had he not taken FMLA leave.  The increasingly disturbing emails and conversations Ballato had with his co-workers and superiors support Comcast's assertion that his termination was not related to his attempt to take FMLA leave, but was instead related to employee safety.  Further, even if true that Comcast erred in considering Ballato's absence on June 5 "unexcused," Ballato did not report for work on June 8-11, more than three consecutive unexcused absences which, under its employment policies, Comcast considers a voluntary resignation.  Ballato did not receive the letter regarding his termination until June 11, and has offered no evidence it was reasonable for him to believe he was terminated from his conversation with the RMC on June 5.[2]

---

[2] A finding from the Minnesota Department of Employment and Economic Development that it was reasonable for a person faced with a message from his employer that he "could not be found in the system" to believe he had been terminated is not binding or persuasive.  The documents offered by Ballato suggest that the only evidence evaluated was his own hand-written account of events.  Besides being self-serving, the hand-written account materially differs from Ballato's sworn deposition testimony.  In the document, Ballato writes "I found out [I was terminated] when I tried to call in FMLA on June 5, 2009 and **was informed I was 'no longer with the company.'**"  (Greenman Decl. Ex. 9) (emphasis added).  Ballato's deposition testimony on the same topic states "They could not find me in their system.  And I even said something to the fact, 'I hope I'm still with the company.' They said '**Are you still with the company**?  You might want to talk to your supervisor.'"  (Ballato Dep. 24:19-23) (emphasis added).  The

(Footnote continued on next page.)

Thus, Ballato has not raised a genuine issue of material fact as to whether his termination was related to his use of FMLA leave. All facts in the case suggest it was not, and that his termination was related to his communications with co-workers and unexcused absences. The absences were reasonably considered unexcused by Comcast as there is no record of Ballato's call, he did not call his supervisor when advised to do so, and he did not respond to a letter from Phan confirming his termination, despite apparently being represented by counsel. The Court therefore concludes that Comcast is entitled to summary judgment on Ballato's interference claim.

### B.  Retaliation

#### 1.  Abandonment

As an initial matter, while Ballato raised a claim under 29 U.S.C. § 2615(a)(2) in his complaint, and Comcast put forth an argument for summary judgment on the claim, Ballato failed to mention the retaliation claim in his opposition brief. Ballato's opposition clearly states, "In this case, Ballato makes a Section 2615(a)(1) interference claim." The heading of the section is "Ballato's Claim" (as opposed to "Claims").

Federal Rule of Civil Procedure 56(e) provides that where "the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). Thus, summary judgment, even when unopposed, can only

---

(Footnote continued.)

determination will not be afforded any credence given that Ballato was the source of the information on which the decision was based.

be entered "when appropriate." *Id.* As the Eighth Circuit has stated regarding the failure to address a basis for summary judgment:

> It [is] not the District Court's responsibility to sift through the record to see if, perhaps, there [is] an issue of fact . . . [F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.

*Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009); *see also Rodgers v. City of Des Moines,* 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").[3] Though Ballato has not put forth any apparent argument responding to Comcast's motion for summary judgment on its retaliation claim, the Court will evaluate the evidence already properly presented to assess whether a genuine issue of material fact exists regarding retaliation as required by Rule 56(e).

### 2. Elements of a Retaliation Claim

There are two ways to prove an FMLA retaliation claim: under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-806 (1973), or through "direct evidence." *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008); *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) ("Direct evidence

---

[3] Courts in other Circuits support this view of unopposed bases for summary judgment, but explicitly discuss that a court must still have a **basis** for granting summary judgment. *See, e.g., United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion . . . [and] ensure that the motion itself is supported by evidentiary materials.").

in this context is not the converse of circumstantial evidence . . . direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence."). *McDonnell Douglas* sets forth a three-part burden shifting test: (1) plaintiff must produce evidence of a prima facie case of retaliation; (2) if plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-retaliatory reason for the adverse action; and (3) the employee must show that the employer's proffered reason for the adverse action was a pretext for unlawful retaliation. *See McDonnell Douglas*, 411 U.S. at 802-06; *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692-93 (8th Cir. 2009). The Court will apply the *McDonnell Douglas* burden shifting framework in its analysis because no evidence demonstrates that an "illegitimate criterion actually motivated the adverse employment action." *Griffith*, 387 F.3d at 736.

To assert a prima facie case of retaliation, Ballato must produce evidence that: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse decision. *See Smith v. Allen Health Sys. Inc.*, 302 F.3d 827, 832 (8th Cir. 2002); *see also Wisbey*, 612 F.3d at 676. Comcast argues that Ballato cannot demonstrate a causal connection, thus a prima facie case of retaliation cannot be established. "[A] causal connection . . . is a showing that an employer's retaliatory

motive played a part in the adverse employment action." *Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (internal quotation marks omitted).

Even taking all the facts in the case in the light most favorable to Ballato, **no facts** suggest a causal connection between his **proper use** of FMLA leave, and his termination. Ballato was allowed to establish eligibility for FMLA leave, and was subsequently allowed to take leave, without "pushback." All the facts suggest termination based on Ballato's erratic behavior and violations of Comcast's personnel policies, not a retaliatory motive by Comcast. Because Ballato cannot establish a causal connection, it is unnecessary for the Court to determine whether Comcast's alleged legitimate, nondiscriminatory reason for termination (Ballato's voluntary abandonment of his job) was a pretext for retaliation. *See McDonnell Douglas*, 411 U.S. at 802-06.

### C.   Front Pay

Comcast argues that the Court should not award front pay as an equitable remedy under the FMLA. Because the Court grants Comcast's motion for summary judgment, the issue of front pay as an equitable remedy is moot.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 11] is **GRANTED**.

### LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 13, 2011             _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                             United States District Judge